IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS JOHNSON, | |
| Plaintiff, | |
| v. | Case No. 20-cv-0113 |
| SHERIFF THOMAS DART, *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Douglas Johnson alleges that he did not receive necessary medical treatment for his back while at Cook County Jail ("CCJ") in 2019. Johnson filed this lawsuit initially *pro se* in 2020 pursuant to 42 U.S.C. § 1983. In his second amended complaint, Johnson sues Cook County, Cook County Sheriff Tom Dart, Chief Administrator for Cermak Health Services of Cook County Susan Shebel, and Physician Assistant Barbara Davis claiming that they were deliberately indifferent to his medical condition. Defendants have moved for summary judgment. For the reasons stated below, Defendants' summary judgment motion [58] is granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a

1

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[1]

Four months before his incarceration at CCJ, Plaintiff Johnson was seen on January 16, 2019 by an experienced neurosurgeon, Dr. Mark Chwajol, at the University of Illinois (Chicago) Hospital. (PSOF ¶ 1). Johnson saw Dr. Chwajol at

---

[1] The facts are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted.

2

UIC Hospital after being referred to him by Dr. Herbert Engelhard, who had treated Johnson in 2015 and 2016. *Id*. ¶ 2. Johnson underwent minimally invasive spinal disc surgery (at L5-S1), performed by Dr. Engelhard in 2009. *Id*. ¶ 4. After a car accident in 2015, Johnson's pain worsened, and Dr. Engelhard treated him in 2016 conservatively with pain medications, physical therapy, and spinal injections. *Id*. Johnson continued to experience pain, and Dr. Engelhard performed a second surgery (a right-sided minimally invasive microdiscectomy at L5-S1) on him on June 30, 2016. *Id*.

Johnson was 5' 6", 180 lbs. when he saw Dr. Chwajol in January 2019. *Id*. ¶ 5. At the time of the examination, Johnson was experiencing worsening symptoms—severe low back pain and bilateral leg pain, which was exacerbated by walking; Johnson had problems walking and Dr. Chwajol documented significant spasm and tenderness to palpation. *Id*. Dr. Chwajol reviewed an MRI of Johnson's lumbar spine taken on September 8, 2018; the MRI revealed significant degenerative changes and a bulging disc at L5- S1, disc narrowing and significant foraminal stenosis (which was resulting in nerve impingement); it also indicated that Johnson had a significant, structural spinal injury. *Id*. ¶ 6. A neurosurgeon determines whether a patient needs spinal surgery based on a patient's subjective symptoms as well as objective evidence. *Id*. ¶ 7. Based on Johnson's subjective complaints and the objective findings during his exam, Dr. Chwajol determined that Johnson was a great surgical candidate for spinal fusion surgery particularly since Johnson had already had two minimally invasive non-fusion surgeries and was still in significant pain. *Id*. ¶ 10.

3

Following Dr. Chwajol's recommendation, Johnson received weekly physical therapy. *Id*. ¶ 13. Before his arrest on April 16, 2019, Johnson had lost weight, as Dr. Chwajol recommended. *Id*. ¶ 15. On May 8, 2019, Johnson was arrested and booked at the CCJ, thus preventing Johnson from seeing Dr. Chwajol for a final surgical assessment. *Id*. ¶ 21. P.A. Davis saw Johnson four times in 2019 (on May 8, June 11, July 24 and September 17). *Id*. ¶ 23. When P.A. Davis first saw Johnson on May 8, 2019, Johnson told Davis about his medical history, including his chronic and persistent back and radicular leg pain, his previous back surgeries, and how he was supposed to have spinal surgery at UIC Medical Center if not for his incarceration. *Id*. ¶ 24. During his initial examination with P.A. Davis, Johnson was using a cane and reported that he had been limping because of his radicular spinal pain. *Id*. ¶ 25. Davis referred Johnson for (yet additional) physical therapy and instructed Johnson (again) to lose weight. *Id*. ¶ 32. Davis saw Johnson again on June 11 and July 24; Johnson was limping on those dates and continued to complain of significant lower back and radicular leg pain. *Id*. ¶ 34. On July 24, Davis ordered an x-ray of the lumbar spine, which (again) documented Johnson's moderate to severe degenerative changes and stenosis at L4-L5 and L5-S1. *Id*. ¶ 35. The findings from the lumbar x-rays were consistent with Johnson's subjective complaints of lower back pain and radicular leg pain. *Id*. ¶ 36. During Davis's medical visit with Johnson, Davis treated him for his back pain by ordering pain medication. DSOF ¶ 13. Davis also referred him to physical therapy. *Id*. ¶ 16. She last treated Johnson in September of 2019. *Id*. ¶ 17.

Defendant Shebel is a Clinical Performance Improvement Analyst at Cermak and

does not medically treat pre-trial detainees. *Id.* ¶ 18. Shebel receives and answers pre-trial detainee medical grievances. *Id.* ¶ 19. Johnson never met or received medical treatment from Shebel. *Id.* ¶ 20. Johnson submitted grievances regarding his back pain; Shebel reviewed and answered some of his grievances. *Id.* ¶¶ 21, 22.

Davis did not obtain Johnson's medical records from Dr. Chwajol and UIC Hospital until September 17, 2019. PSOF ¶ 41. On November 25, 2019, Johnson was seen in the jail's medical office by another physician's assistant, Manisha Patel, who after examining Johnson and reviewing his medical records, ordered that Johnson be seen by a neurosurgeon. *Id.* ¶¶ 44, 45. On December 7, 2019 (six months after his arrest), Johnson still had not been seen by a neurosurgeon since being taken into custody. *Id.* ¶ 47. On that date, Johnson felt sharp, shooting pains in his lower back and collapsed in his cell block. *Id.* Johnson also experienced temporary paralysis and was unable to move for a period of time. Officials then took him by wheelchair to Cermak Hospital. *Id.*[2]

In his Second Amended Complaint (SAC) [16], Johnson alleges that his Eighth Amendment rights were violated by Defendants Schebel and Davis, who Johnson

---

[2] Although Defendants argue that Johnson did not comply with Local Rule 56.1, in fact, neither party fully complied with the local rule. *See e.g. Bank of New York Mellon v. Holmes*, No. 14-CV-04440, 2018 WL 1586240, at *3 (N.D. Ill. Apr. 2, 2018) ("Local Rule 56.1 does not authorize parties to cross reference facts in other documents or responses."). The Court has discretion with regard to Local Rule 56.1 enforcement. *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016). The Court will not automatically deem certain facts admitted but will consider the pertinent asserted facts as they are supported by the evidence.

alleges were deliberately indifferent to his serious medical condition. Sheriff Dart is sued only in his official capacity.[3]

## ANALYSIS

Johnson argues that a reasonable jury could find that Defendants acted with deliberate indifference to his serious spinal problems. Defendants contend, however, that summary judgment is proper because (1) Johnson has failed to show Shebel's personal involvement in any alleged constitutional violations; (2) Johnson failed to establish a *Monell* claim against Dart; (3) Johnson failed to establish Dart knew or participated in any alleged constitutional violations; (4) Dart is not a medical defendant and therefore cannot be held liable for Johnson's medical treatment; (5) Johnson cannot show that the medical treatment by Davis was deliberately indifferent; and (vi) Defendants are entitled to qualified immunity.

### I. Objective unreasonableness

Johnson's operative complaint alleges violations of the Eighth Amendment, and both parties briefed summary judgment based on the Eighth Amendment standard. However the record reflects that Johnson was a pretrial detainee at CCJ at the relevant time.[4] (Indeed the Court's March 2020 review order cited the Fourteenth Amendment [8]). Thus the Fourteenth Amendment, not the Eighth, govern Johnson's

---

[3] Although the caption of the SAC states "Cook County Sheriff's Office", in addition to the individual defendants, Johnson named Cook County as a defendant. SAC ¶ 9. As explained below, the Court will permit Johnson to proceed against Cook County solely for indemnification purposes. Cook County Sheriff's Office will be dismissed as a defendant.

[4] At the time of the operative complaint, Johnson alleged he was incarcerated at CCJ, and in his response to Defendants' statement of facts, he stated he was released from CCJ in December 2021. (Dkt. 65 at 1).

claims. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Hitzke as next friend of Hitzke v. Vill. of Mundelein*, 524 F. Supp. 3d 822 (N.D. Ill. 2021). Pretrial detainees have rights "at least as great" as convicted prisoners have under the Eighth Amendment. *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). An objective unreasonableness inquiry applies. *Miranda*, 900 F.3d at 352. As discussed further below, the Court analyzes the summary judgment motion under the Fourteenth Amendment and denies summary judgment with respect to Davis under that standard.[5] Moreover, under the Eighth Amendment framework, the Court would reach the same conclusion and deny summary judgment to Davis.

In this case, Defendants do not dispute that Johnson's medical condition was objectively serious. The question then is whether Defendants' conduct was objectively unreasonable.

## II. Defendants Dart and Shebel

### a. Dart

Johnson does not respond to any of Defendants' arguments in favor of granting summary judgment for Sheriff Dart. In his response brief, Johnson states that he does not object to summary judgment being granted on the official capacity claims against Dart. He argues, though, that Cook County is responsible for indemnifying its employees in the event of a settlement or a judgment entered against any of the individual Defendants. (Dkt. 66, n. 1). Defendants respond that Johnson did not name

---

[5] Because the Fourteenth Amendment is broader, giving pretrial detainees rights "at least as great" as those under the Eighth Amendment, this opinion relies as well on case law analyzing the Eighth Amendment. *See Williams v. Harmston*, No. 15 C 5045, 2018 WL 2435540, at *3 (N.D. Ill. May 30, 2018).

7

Cook County and it would be too late to do so now (Dkt. 67).[6] In the operative complaint, however, Johnson did name Cook County as a defendant, alleging: "Defendant Cook County is obligated to defend and indemnify the individually named Defendants for the actions taken by those Defendants under color of law." (SAC ¶ 9). And although Defendants argue that Dart is not a Cook County employee, they do not make that argument about Davis.[7]

Accordingly summary judgment is granted in Dart's favor. However Cook County remains as a defendant for indemnification purposes. Cook County Sheriff's Office is dismissed.

### b. Shebel

Johnson does not respond to Defendants' argument that Johnson failed to provide any evidence of Shebel's personal involvement. Indeed to be liable for an alleged deprivation of constitutional rights, a defendant must be "personally responsible" for the deprivation. *Mitchell v. Kallas,* 895 F.3d 492, 498 (7th Cir. 2018). A plaintiff seeking to hold supervisors liable cannot "rely on a theory of respondeat superior but, instead, must present evidence that the defendants violated the Constitution through their own conduct." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022).

---

[6] To the extent this can be construed as a statute of limitations argument, it is not convincing. *See Esparza v. Dart*, No. 14 CV 1390, 2014 WL 5628050, at *3 (N.D. Ill. Nov. 4, 2014) (finding plaintiff's claim against Cook County timely because the statute of limitations on indemnity claims under the Illinois statute does not begin to accrue until judgment is entered against the employee).

[7] Indeed at her deposition, Davis confirmed that she was hired by Cook County to provide primary care. (Davis Dep. (Dkt. 68-1), p. 9).

8

Johnson's sole mention of Shebel in his response brief (Dkt. 66 at 8, explaining that she was "assigned to respond to the grievances submitted by pre-trial detainees") does not meet this standard. *See e.g. Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017) (involvement in grievance process alone does not give rise to liability). Moreover Johnson's failure to develop this argument results in its waiver. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Summary judgment is granted in Susan Shebel's favor.

### III. Defendant Davis

Medical professionals generally have discretion in treatment decisions and may be held liable if objectively unreasonable described as "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *See Johnson v. Rimmer,* 936 F.3d 695, 707 (7th Cir. 2019); *see also James v. Hale*, 959 F.3d 307 (7th Cir. 2020). Moreover, objective unreasonableness under the Fourteenth Amendment allows for delay in treatment to serve as the basis for a liability when the prolonged delay worsens the injury or caused some degree of harm. *See Miranda,* 900 F.3d at 347; *Love v. Dart,* No. 19 C 2762, 2022 WL 797051, at *5 (N.D. Ill. Mar. 16, 2022); *see also Malvick v. Langlade Cnty.*, No. 22-CV-0625-BHL, 2022 WL 2528270, at *2 (E.D. Wis. July 7, 2022).

9

The standard required for an Eighth Amendment violation provides that:

> [A] plaintiff might point to a number of things, including the obviousness of the risk, the defendant's persistence in a course of treatment known to be ineffective, or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment.

*Davis v. Kayira,* 938 F.3d 910, 915 (7th Cir. 2019) (cleaned up). This standard too allows for liability based on delayed treatment. *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021) ("a physician's delay, even if brief, in referring an inmate to a specialist in the face of a known need for specialist treatment may also reflect deliberate indifference under the Eighth Amendment.").

Johnson argues that Davis never referred him to a neurosurgeon, and when he finally received that referral, it was from a different P.A., soon after he collapsed and suffered temporary paralysis.

In this case, it is undisputed that in January 2019, Dr. Chwajol determined that Johnson was a great surgical candidate for spinal fusion surgery (PSOF ¶ 10). Specifically, Dr. Chwajol's January 16, 2019 progress note stated that Johnson might need surgery in the future but before that, the doctor wanted him to lose weight and do physical therapy. (Dkt. 60). Dr. Chwajol stated he wanted to see Johnson again in 4 to 5 months and if "there is no improvement or worsening, I believe the patient will be a candidate for [spinal surgery]." *Id*.

It is further undisputed that: Johnson was arrested and booked at the Cook County Jail on May 8, 2019, thus preventing Johnson from seeing Dr. Chwajol for a

10

final surgical assessment (PSOF ¶ 21); P.A. Davis saw Johnson four times, from May to September 2019 (*id.* ¶ 23); when Davis first saw Johnson, Johnson told her about his medical history, including his chronic and persistent back and radicular leg pain, previous back surgeries, and how he was supposed to have spinal surgery at UIC Medical Center if not for his incarceration (*id.* ¶ 24). During his initial examination with P.A. Davis, Johnson was using a cane and reported that he had been limping because of his radicular spinal pain and during this time, Johnson would often experience throbbing, aching, stabbing pain in his lower back and radicular pain which would shoot into his right leg (*id.* ¶¶ 25, 26). Further, it is undisputed that Davis referred Johnson for additional physical therapy and instructed Johnson again to lose weight (*Id.* ¶ 32); Davis saw Johnson again on June 11 and July 24, 2019 and at that time Johnson was limping and continued to complain of significant lower back and radicular leg pain (*id.* ¶ 34); on July 24, Davis ordered an x-ray of the lumbar spine, which (again) documented Johnson's moderate to severe degenerative changes and stenosis at L4-L5 and L5- S1 (*id.* ¶ 35); and the findings from the lumbar x-rays were consistent with Johnson's subjective complaints of lower back pain and radicular leg pain. (*Id.* ¶ 36).[8]

In addition, Defendants concede that Johnson submitted grievances about his back pain. DSOF ¶ 21. It is also undisputed that when PA Patel saw Johnson on November 25, 2019, she ordered that he be seen by a neurosurgeon. PSOF ¶¶ 44, 45. Finally, Defendants do not dispute that less than two weeks after Johnson's visit with

---

[8] Davis testified that the expectation would be that Johnson would be referred to physical therapy and then once completed, he would be referred to neurosurgery. (Davis Dep. p. 74).

11

Patel, he still had not been seen by a neurosurgeon, and collapsed in his cell block and experienced temporary paralysis. *Id.* ¶ 47.[9]

In light of these undisputed facts and taking all reasonable inferences in Johnson's favor, there is a question for a trier of fact about whether Davis acted at least recklessly when considering the consequences of her response to Johnson's condition and about whether her conduct in not making the referral to a neurosurgeon was objectively unreasonable in light of the totality of the facts. *See James*, 959 F.3d at 318; *see also Thomas*, 991 F.3d at 771 ("Failure to provide necessary relief and delaying access to a qualified specialist can lead to prolongation of pain."). Indeed under the Fourteenth Amendment there is no need to prove that Davis "was *subjectively* aware" of wrongdoing. *Miranda,* 900 F.3d at 351–52.

Finally, Defendants argue that Davis is entitled to qualified immunity. "In actions under 42 U.S.C. § 1983 alleging violations of constitutional rights, qualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (citation omitted). A prison official is immune from suit if the constitutional right at issue was not clearly established at the time of the

---

[9] Defendants argue that Dr. Chwajol is not qualified as an expert to opine on whether Davis's medical treatment fell below applicable standards for a physician assistant. But other evidence, as discussed, shows that there is a question of fact about whether the medical care provided by Davis was constitutionally inadequate. To show that the defendant's actions or inaction caused a delay in his treatment, a plaintiff may rely on expert testimony that he suffered because of the delay but he can also rely on other evidence. *See Flournoy v. Est. of Obaisi*, No. 17 CV 7994, 2020 WL 5593284, at *8 (N.D. Ill. Sept. 18, 2020).

violation, and a reasonable officer would not have known that his conduct was unlawful. *Orlowski v. Milwaukee Cnty.,* 872 F.3d 417, 421 (7th Cir. 2017).

Defendants frame the issue by arguing that an inmate does not have a "constitutional right to demand specific treatment." (Dkt. 67 at 9). But that is not what happened here. The Court has found that Johnson has demonstrated that there is a genuine issue of fact about whether Davis failed to provide adequate medical care under the Fourteenth Amendment by not referring Johnson to a neurosurgeon.

The Court finds that summary judgment on qualified immunity grounds is not proper. *See Petties v. Carter,* 836 F.3d 722, 734 (7th Cir. 2016), as amended (Aug. 25, 2016). As the court explained in *Petties*, an inadequate medical care case, "Given that the threshold factual questions of the defendants' states of mind remain disputed, summary judgment on the basis of qualified immunity is inappropriate." *See also Terry v. Cnty. of Milwaukee*, 357 F. Supp. 3d 732, 749-51 (E.D. Wis. 2019).[10]

Therefore summary judgment as to Barbara Davis is denied.

## CONCLUSION

For the stated reasons, Defendants' summary judgment motion [58] is granted in part and denied in part. Summary judgment is granted in favor of Defendants Tom Dart and Susan Shebel and those defendants are dismissed. The Cook County

---

[10] Although factual disputes preclude granting qualified immunity at summary judgment, this does not bar Davis from asserting qualified immunity at trial. *Stewardson v. Biggs*, 43 F.4th 732, 737 (7th Cir. 2022), reh'g denied, No. 21-3118, 2022 WL 16954354 (7th Cir. Nov. 15, 2022). "At trial, a jury may resolve disputed facts in [defendant's] favor, and the district court could then determine he is entitled to qualified immunity as a matter of law." *Id.* (cleaned up).

Sheriff's Office is also dismissed. Summary judgment is denied as to Defendants Barbara Davis and Cook County.

E N T E R:

Dated: December 2, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge